STATE OF NORTH CAROLINA v. MATTHEW EDWARDS, JR.

No. 8314SC1090

(Filed 4 September 1984)

1. **Searches and Seizures § 41— execution of search warrant—knock and announce requirements—forcible entry**

    Officers executing a warrant to search defendant's apartment for cocaine complied with the knock and announce requirements of G.S. 15A-249 where they knocked on the door and announced in a loud, authoritative voice that they were the police with a search warrant; further, the authority of the officers under G.S. 15A-251 forcibly to enter the premises was established by proof that approximately 30 seconds went by without a response to the officers' knock and announcement, since a 30 second wait was sufficient where instantly disposable contraband was involved.

2. **Searches and Seizures § 39— search warrant—time of execution**

    A search of defendant's apartment for cocaine pursuant to a warrant was not unreasonable because it was accomplished at night where the search was made at night because traffic into and out of the apartment had been heavier at night, and the officers needed the cover of darkness to approach the apartment without detection.

**3. Criminal Law § 91— withdrawal of no contest plea—adding case to trial calendar**

Where defendant entered a plea of no contest and was scheduled to be sentenced on a certain date, defendant's case did not appear on the calendar listing cases to be tried at that session, and defendant was permitted to withdraw his no contest plea when his case was called for sentencing, the prosecutor did not violate G.S. 7A-49.3 when he added defendant's case to the trial calendar and began the trial the next day. Further, defendant failed to show that he was prejudiced by the trial of his case at such time because of the absence of an expert witness where the record did not show when the witness could have testified or what his testimony would have been.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 20 May 1983 in Superior Court, DURHAM County. Heard in the Court of Appeals 8 May 1984.

Defendant was tried for and convicted of level two trafficking in cocaine, in violation of G.S. 90-95(h)(3)(b). He was sentenced to fourteen years in prison and fined $100,000.

The State's evidence indicated that: After receiving information from a confidential informant that defendant was in possession of a large quantity of cocaine in his duplex apartment at 819 Arnette Avenue in Durham, Durham Public Safety Officer E. J. Kolbinsky arranged for the informant to purchase cocaine from defendant; and less than 72 hours after the controlled buy was made, Kolbinsky obtained a warrant to search the apartment involved. The warrant was issued at 10 o'clock at night on 30 July 1982, and was executed about 45 minutes later. When Kolbinsky and other officers arrived at the duplex, an officer knocked on the storm door, which was locked, and announced in a loud, authoritative voice, "police have a search warrant, open the door." After approximately 30 seconds went by without the knock being answered, the officers forced open the storm door and the wooden front door and entered the apartment. There they found defendant dressed in a bathrobe, several other persons, over 200 grams of a white powdery substance later determined to contain cocaine, a receipt made out to "Matthew Edwards" for paying the cable television bill for the residence, a pistol, which defendant said belonged to his daughter, and several items commonly used in the illicit drug trade, including a set of scales. Defendant was placed under arrest and the items found in the search were seized by the police.

During the pre-trial stage defendant moved to suppress the evidence seized during the search, but this motion was denied. In a bargain with the State, defendant then pleaded no contest to a lesser included offense and was scheduled to be sentenced on 18 May 1983. On that day, when the case was called for sentencing, defendant moved, in open court, to withdraw his plea on the ground that it was not voluntarily entered, and the motion was granted. Over defendant's objection, his trial began the next day.

*Attorney General Edmisten, by Assistant Attorney General Alfred N. Salley, for the State.*

*Loflin & Loflin, by Thomas F. Loflin III, Alexander Charns, Michelle F. Robertson and Dean A. Shangler, for defendant appellant.*

PHILLIPS, Judge.

The two main questions presented by this appeal are whether the evidence seized when defendant was arrested should have been suppressed because the search violated either North Carolina law or the United States Constitution, and whether defendant was legally prejudiced by his case being tried when it was, though it had been scheduled for sentencing, rather than trial. We answer both these questions in the negative and hold that defendant's trial was without reversible error.

[1] One ground for nullifying the search of his premises that defendant asserts is that the search violated the provisions of G.S. 15A-249 and G.S. 15A-251. This argument has no support in the record. G.S. 15A-249 requires an officer executing a search warrant, before entering the premises, to "give appropriate notice of his identity and purpose," and "[i]f it is unclear whether anyone is present at the premises to be searched, he must give the notice in a manner likely to be heard by anyone who is present." And G.S. 15A-251 authorizes an officer that has given the notice required by G.S. 15A-249 and who "reasonably believes either that admittance is being denied or unreasonably delayed or that the premises . . . is unoccupied" to break and enter the premises involved when necessary to execute the warrant. The only evidence presented at the suppression hearing supports the court's conclusion that the officers involved complied with both of these statutes. Their compliance with G.S. 15A-249 was

shown by evidence that the officers knocked on the door and announced in a "loud, authoritative" voice that they were police with a search warrant. And their authority to forcibly enter the premises, under G.S. 15A-251, was established by proof that after having given the notice required by G.S. 15A-249, no response was made to their knock and "loud, authoritative" announcement for about 30 seconds. Such a delay, under the circumstances, warranted the officers in believing that their entry to the premises was either being denied or unreasonably delayed and thus justified their entry by force. What is a reasonable time between notice and entry depends on the particular circumstances in each case. *State v. Gaines*, 33 N.C. App. 66, 234 S.E. 2d 42 (1977). In this case, since the object of the search was a quantity of powdery contraband peculiarly susceptible to being almost instantly disposed of, we hold that the 30-second wait that occurred after giving notice was both sufficient and reasonable.

[2]    The defendant's main ground for contending that the search was unreasonable, and thus forbidden by the Fourth Amendment to the United States Constitution, is that the search was accomplished at night. That the place searched was a home and the search was made at night are certainly factors to be considered in determining the reasonableness of a search. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L.Ed. 2d 564, 91 S.Ct. 2022, *reh. denied*, 404 U.S. 874, 30 L.Ed. 2d 120, 92 S.Ct. 26 (1971). But those are not the only factors that require consideration; the nature of the alleged contraband searched for, the traffic generated by it, and the times and places it is handled by criminals are also factors to be considered. The search in this instance was made at night, so the officer testified, because the traffic into and out of the duplex had been heavier at night, and the officers needed the cover of darkness in approaching the residence, lest news of their presence in the neighborhood reach the defendant and others in the house before the search could be attempted. These are good and sufficient reasons for conducting a search for criminal contraband at night, in our opinion, and under the circumstances we believe the search was reasonable and well within constitutional standards. Those who conduct criminal operations at night have no constitutional right to be searched only in daylight.

[3]    With respect to Judge McLelland's refusal to postpone the trial after granting defendant's motion to withdraw his no contest

plea, the record shows the following: Defendant was indicted on 7 September 1982. On 20 September 1982 defendant waived arraignment and entered a plea of not guilty. On 18 November 1982 an order was entered permitting defendant's expert chemist, Dr. Robert Shapiro of Harrisonburg, Virginia, to independently test a sample of the substance seized when defendant was arrested. On 21 March 1983 defendant's motion to suppress was filed. His case was scheduled to be tried 18 April 1983; but defendant's motion to suppress was heard and denied that day, after which defendant pled no contest to a lesser charge and he was scheduled to be sentenced on 18 May 1983. Prior thereto a trial calendar was duly filed listing the cases to be tried at that session and defendant's case was not on it. When defendant's case was called for sentencing on 18 May 1983, he orally moved to withdraw his no contest plea and was permitted to do so upon evidence not brought forward in the record. That same afternoon at 4:55 o'clock, the District Attorney announced that defendant's case was being added to the trial calendar and trial would begin the next morning at 9:30. Defendant objected on the grounds that the case was not on the trial calendar for that week as required by G.S. 7A-49.3, and that trying the case on such short notice would deprive him of his constitutional right to present witnesses. Upon counsel contending that Dr. Shapiro's testimony was essential to the defense of the case and that Dr. Shapiro could be in court upon seven days' notice, Judge McLelland asked if the witness could appear on shorter notice, and defense counsel responded, "I just don't know until I can talk to him." Thereafter the record is silent as to Dr. Shapiro. In particular it contains no report of Dr. Shapiro being contacted again or the result thereof, and contains no indication of what Dr. Shapiro's testimony would have been if he had appeared. Defendant argues that since his case was on the sentencing calendar, rather than the trial calendar, it was a violation of G.S. 7A-49.3 for his case to be called for trial that week. That statute does require the District Attorney to file a calendar of cases he intends to call for trial at each court session; but it also expressly provides that a case docketed after the calendar is filed can be called for trial at the District Attorney's discretion. Since the District Attorney did not know when the calendar was made up that defendant's case would be returned to the trial docket because of defendant's change of plea, we see no violation of the statute in the case being added to the 19 May 1983 trial calendar

as it was. And since the record does not show when, if at all, Dr. Shapiro could have testified or what his testimony would have been, no error by the court or prejudice to the defendant has been shown. For a new trial to be ordered, both error and prejudice must be shown. *State v. Moses*, 272 N.C. 509, 158 S.E. 2d 617 (1968). Defendant has failed to show either.

The eleven other arguments made by defendant relate to the admissibility of various testimony and exhibits, the sufficiency of the evidence to support the indictment, and the judge's instructions to the jury. All these arguments have been carefully considered, and in our opinion none have merit or warrant further discussion.

No error.

Judges HEDRICK and ARNOLD concur.